1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA D. ROBERTS,

                                    Plaintiff,

       v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                                    Defendant.

Case No. 2:15-cv-01181-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12

13

14

15

16

17

18

        Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance benefits. This matter has been referred to the undersigned

Magistrate Judge. *See Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. §

636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the Court reverses

defendant's denial of plaintiff's application and remands this matter for further administrative

proceedings.

19

20

21

22

23

24

25

26

                        FACTUAL AND PROCEDURAL HISTORY

        On August 9, 2012, plaintiff filed an application for disability insurance benefits, alleging

disability as of January 19, 2011. Dkt. 7, Administrative Record (AR) 25. That application was

denied initially on administrative review on October 23, 2012, and on reconsideration on

December 31, 2012. *Id.* On June 7, 2013, plaintiff, represented by counsel, appeared at a hearing

held before an administrative law judge (ALJ) and testified, as did a lay witness and a vocational

expert. AR 145-90.

ORDER - 1

1
2
3
4
5
6
7
8

In a decision dated November 8, 2013, the ALJ determined plaintiff to be not disabled. AR 25-38. On May 28, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner. AR 1; 20 C.F.R. § 404.981. On July 25, 2015, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. Dkt. 1. The administrative record was filed with the Court on October 19, 2015. Dkt. 7. As the parties have completed their briefing, this matter is now ripe for the Court's review.

9
10
11
12
13
14
15
16
17
18
19
20
21
22

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in failing to find plaintiff's left wrist tenosynovitis was a severe impairment; (2) in evaluating the opinions of Roberts Hoskins, M.D., Michael Santoro, M.D., Ruth Baer, M.D., and Anne Evans, OTR/L and Julie Parnell, P.T.; (3) in discounting plaintiff's credibility; (4) in rejecting the lay witness evidence in the record; (5) in assessing plaintiff's residual functional capacity (RFC); and (6) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the Court agrees the ALJ erred in evaluating the opinion of Dr. Hoskins, and thus in assessing plaintiff's RFC and in finding her to be capable of performing other jobs. Also for the reasons set forth below, however, while the Court finds the decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

23

DISCUSSION

24
25
26

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th

ORDER - 2

Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.      The ALJ's Evaluation of Dr. Hoskins' Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

ORDER - 4

1

2    In general, more weight is given to a treating physician's opinion than to the opinions of

3    those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need

     not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

4    inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of*

5    *Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d

6    947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An

7    examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining

8    physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute

9

10   substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at

11   830-31; *Tonapetyan*, 242 F.3d at 1149.

12            With respect to the medical opinion evidence from Dr. Hoskins, the ALJ found:

13
     I give some weight to the opinion of Robert Hoskins, M.D., a State agency
14   medical consultant for Disability Determination Services (DDS) (4A). In
     December 2012, Dr. Hoskins opined that the claimant can lift/carry 10 pounds
15   occasionally and less [sic] 10 pounds frequently; and can stand or walk for 6
     hours and sit for 6 hours in an 8-hour workday with normal breaks. He further
16   opined that the claimant can unlimitedly climb ramps and stairs, balance,
     reach in all directions, and feel with her hands. Moreover, Dr. Hoskins also
17   opined that the claimant can occasionally climb ladders, ropes, or scaffolds;
     crawl; and handle with right upper extremity. Furthermore, the claimant can
18   frequent [sic] bilateral fingering and handling with [sic] left upper extremity.
     Yet, the claimant should avoid repetitive pushing and pulling using bilateral
19   upper extremities. Moreover, due to bilateral wrist injury, she should also
     avoid concentrated exposure of vibration. Moreover, Dr. Hoskins opined that
20   the claimant needs to be able to access to [sic] restroom facilities as needed. I
     give some weight to Dr. Hoskins' opinion because he formed his opinion after
21   reviewing the claimant's medical records and provided a detailed explanation
     of the evidence relied on in forming his opinion. More importantly, his
22   opinion is mostly all consistent with the record as a whole, including the
     objective finding. However, the current record contains the claimant's self-
23   reported activities of daily living, which demonstrate that the claimant can
     perform work at light exertional level, and not as limited as opined by the
24   State medical consultant.

25
26   AR 34 (internal footnote omitted). Plaintiff argues, and the Court agrees, that the ALJ failed to

     ORDER - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

provide a valid basis for not adopting the limitation to only occasional handling with the right upper extremity. The only reason the ALJ gave for not adopting Dr. Hoskins' opinion was that plaintiff's activities of daily living demonstrate she can perform work at the light exertional level. The record, however, fails to establish she performed those activities either at a frequency or to an extent necessarily inconsistent therewith. AR 152-53, 156-57, 159-62, 169-74, 315-20, 322-23, 333-37, 339-45, 347-49, 355, 359, 361-62.

II.       The ALJ's RFC Assessment

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *Id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2. A claimant's RFC assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *Id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related

ORDER - 6

functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at \*7.

The ALJ found plaintiff had the residual functional capacity:

> **to perform light work . . . She can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk a total of six hours in an eight-hour workday; and to sit for six hours in the same period, with typical breaks. She can occasionally climb ladders, ropes or scaffolds; and crawl. She can frequently stoop, crouch, finger, and handle but she is to avoid highly repetitive wrist activities, such as frequent keyboarding or highly repetitive pushing and pulling levers. She should also avoid concentrated exposure to excessive vibrations, and workplace hazards, such as dangerous machinery and unprotected heights. Her workplace should provide regular access to a bathroom.**

AR 29 (emphasis in original). Plaintiff argues this assessment fails to adequately account for all of her functional limitations. Given the ALJ's error in failing to provide a valid basis for not adopting the limitation to occasional handling with the right upper extremity Dr. Hoskins found, the Court agrees.

III.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's

ORDER - 7

1  description of the claimant's functional limitations "must be accurate, detailed, and supported by

2  the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description

3  those limitations he or she finds do not exist. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

4  2001).

5          At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

6  substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

7  functional capacity. AR 176-77. In response to that question – and to a second question in which

8  the ALJ limited the individual to lifting only 10 pounds occasionally and three pounds frequently

9  – the vocational expert testified that an individual with those limitations, and with the same age,

10  education and work experience as plaintiff, could perform the jobs of surveillance system

11  monitor (Dictionary of Occupational Titles (DOT) 379.367-010), office clerk (DOT 249.587-

12  014)  and food and beverage clerk (DOT 209.567-014). AR 176-80. Based on the testimony of

13  the vocational expert, the ALJ found plaintiff would be capable of performing those jobs, and

14  thus of performing other jobs existing in significant numbers in the national economy. AR 38.

15  The ALJ further found plaintiff to be capable of performing the job of hotel and restaurant

16  hostess (DOT 310.137-010) based on the opinion of a different vocational consultant. AR 37-38.

17          As plaintiff points out, though, each of the above jobs – other than that of surveillance

18  system monitor – require the ability to perform frequent handling. DOT 249.587-014; DOT

19  209.567-014; DOT 310.137-010. But because of the ALJ's error in failing to validly reject the

20  limitation to only occasional handling with the right upper extremity assessed by Dr. Hoskins

21  and in failing to include that limitation in the assessment of plaintiff's RFC, the hypothetical

22  questions the ALJ posed, and therefore the vocational expert's testimony and the ALJ's reliance

23  thereon to find plaintiff not disabled at step five, cannot be said to be supported by substantial

ORDER - 8

1   evidence or to be free of error. In addition, although the DOT itself does not indicate there is any

2   handling limitation in regard to the surveillance system monitor job, the vocational expert at the

3   hearing testified that with respect to jobs such as that one which are unskilled and sedentary in

4   nature, "it's very difficult to find something" that is restricted to occasional handling. AR 180.

5   That job, therefore, would appear to be precluded as well.

6   IV.     This Matter Should Be Remanded for Further Administrative Proceedings

7          A Court may order remand "either for additional evidence and findings or to award

8   benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court

9   reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the

10  agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

11  Cir. 2004) (citations omitted). As such, it is only "the unusual case in which it is clear from the

12  record that the claimant is unable to perform gainful employment in the national economy," that

13  "remand for an immediate award of benefits is appropriate." *Id.*

14         Benefits may be awarded where "the record has been fully developed" and "further

15  administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v.*

16  *Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

17  where:

18         (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
           claimant's] evidence, (2) there are no outstanding issues that must be resolved
19         before a determination of disability can be made, and (3) it is clear from the
           record that the ALJ would be required to find the claimant disabled were such
20         evidence credited.

21  *Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

22  Because it is not entirely clear that the ALJ would be required to adopt the limitation to

23  occasional handling with the right upper extremity Dr. Hoskins assessed or to find her disabled

ORDER - 9

on that basis, issues still remain in regard to plaintiff's RFC, as well as her ability to perform other jobs existing in significant numbers in the national economy. Therefore, remand for further consideration of those issues is warranted.

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 22nd day of February, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 10